Thomas BOYLAN, Plaintiff and Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF CASS COUNTY, North Dakota, North Dakota State Highway Department, and A. W. Wentz, Defendants and Respondents.

No. 7857.

Supreme Court of North Dakota.

Oct. 3, 1960.

Ohnstad, Twichell & Maxwell, West Fargo, for plaintiff and appellant.

Leslie R. Burgum, Atty. Gen., and Francis Breidenbach, Asst. Atty. Gen., for defendants and respondents.

BURKE, Judge.

This is a proceeding instituted, pursuant to the provisions of Chapter 24–01, 1957 Supp. NDRC 1943, to acquire land for highway purposes. The tract of land belonging to the appellant comprised 8.66 acres which were needed for right of way for Interstate Highway 94 and the location of an interchange thereon. The Board of County Commissioners of Cass County, after due notice and hearing, determined that appellant's damages, as a result of the taking of the tract, amounted to $4,914. Appellant appealed from the decision of the county commissioners. Upon a trial in district court a jury returned a verdict in appellant's favor, in the sum of $5,874. Judgment was entered upon the verdict and this appeal is from the judgment.

There are two specifications of error. The first specifies error upon the admission of expert testimony of the witness King and the second relates to ten separate references, in the court's instructions to the jury, to the allowance of benefits from the improvement in mitigation of appellant's damages.

■ ■■■ During the trial of the case it was conceded by all parties that one of the elements of appellant's damages was the cost of building a new road from the buildings upon his land to the interchange which would give him access to Highway 94. An expert called to testify on behalf of appellant estimated that the cost of such a road would be $3,000. Robert E. King, an appraiser for the State Highway Department, was called as a witness for respondent. The following is an extract from his testimony:

"Q. And what would you estimate the cost of construction of such a road to be?

"Mr. Maxwell: That is objected to, if the Court please on the ground that there is no foundation laid. This man has not been qualified and no testimony adduced to base the cost of building roads.

"The Court: I think you could lay a little better foundation.

"Mr. Breidenbach: Q. In your appraisal of the situation, Mr. King, did you consult with any of the members of the Highway Department either in the construction or the designing department? A. Yes, I discussed the matter with them.

"Q. And did they more nearly than you have the experience of acquainting themselves with the cost of such roads? A. They are well versed on the cost of various types of road buildings.

"Q. And theirs is the experience of having to frequently examine bids on similar road projects. A. Yes. Bids and Estimates.

"Q. Based on that investigation do you have an opinion of the cost of construction of a road such as you have already described for the Boylan property? A. Yes, I have.

"Q. What is your opinion?

"Mr. Maxwell: Now just a moment. That is objected to on the grounds that this man has not been qualified as an expert in the matter of road building, and upon the further ground that this testimony has been shown now to be based upon hearsay.

"Mr. Breidenbach: Your Honor, clearly it is based upon hearsay, just as all appraisor's testimony is. It must be based on the examination of books and records in the Register of Deeds, they talk with people, they went to Armour and people, and it is purely a matter of convenience if nothing else. In other words, it would be impossible to expect to bring in all the people and all

of the books and records upon which an appraisor bases his opinion.

"Mr. Maxwell: But he is not giving, if the Court please, an expert opinion upon the appraisal. He is giving an expert opinion of the cost of road building.

"Mr. Breidenbach: As part of an appraisal.

"The Court: May I ask, you are a full fledged engineer with a degree, are you? A. No, Sir, I do not have a degree. However, I have taken and passed the examination which is given by the State Board to Graduating Seniors in Engineering. I am a member of the North Dakota Society of Professional Engineers.

"The Court: And you have had supervision of the division of construction of roads as connected with the Highway Department, have you? A. Not direct supervision, no, Sir. I have worked in design of roadways and I have computed the cost of this type of roadway myself.

"The Court: Oh, I will overrule the objection. You may answer the question. A. $2,000.00".

Appellant contends that the admission of this testimony was error because the foundation did not establish sufficient qualification on the part of the witness to permit him to express an expert opinion. The foundation, however, did establish that the witness had passed the examination given to candidates for a degree in engineering, that he was a member of the North Dakota Society of Professional Engineers and that in his employment he had computed the cost of similar roads. The question of whether a witness is qualified to give expert testimony is one which is largely within the discretion of the presiding judge. City of Bismarck v. Casey, 77 N.D. 295, 43 N.W.2d 372, 373; Otter Tail Power Company v. Malme, N.D., 92 N.W.2d 514; Fisher v. Suko, N.D., 98 N.W.2d 895. Here the

foundation had established sufficient expertise on the part of the witness to bring the ruling, allowing him to testify to an opinion, well within the limits of the trial judge's discretion.

Upon the issue of the benefits which might accrue to appellant's property by reason of its proximity to an interchange upon an interstate highway, the expert for the State Highway Department testified as follows:

"Then we would also consider that this farm is located directly on an interchange and that it has off-setting advantages as well.

"Q. And what might they be? Or what will they be? A. It is hard to put it in dollars and cents what the off-setting value will be by having a piece of land located directly upon an interstate coast to coast four lane highway.

"Q. Well, what would be the nature of those benefits?

"Mr. Hohman: That is objected to as already having been answered. Repetitious.

"The Court: No, I don't think so. Overruled. A. The fact that a piece of ground is located directly on an interchange means this: That whenever you travel to any point in the United States, and you may also go up into Canada and down to Mexico on this interstate system, you can go from coast to coast without crossing any line of traffic, as soon as this interstate highway system is completed. That has a very definite enhancement to value on a piece of property located close to an interchange. I wouldn't say that there were any definite commercial possibilities attributable to every point. But when you are located directly on an interchange you immediately get onto a four lane divided highway and you have no traffic to contend with until

you get to your destination. That definitely has an enhancing value.

"Q. In your opinion does that consideration have an effect on the present market value of the property? A. Yes, I believe it would."

 It is urged by appellant that, since the foregoing is the only testimony in the record as to the nature or value of any benefits, it was error for the trial judge to submit the issue of the value of such prospective benefits to the jury. We are agreed that this contention must be sustained. The prospective benefits were of such a nature that the expert, himself, found it impossible to place dollar valuation on them. To have asked the jury to evaluate benefits, which a trained appraiser found impossible to evaluate, and without any evidence whatever as to their dollar value was to submit the issue of the value of benefits to conjecture and speculation. The state of the evidence here is practically identical with that which existed in Phillips v. State, 167 Neb. 541, 93 N.W.2d 635. In that case the court stated (at pages 636, 637):

"* * * The witness did not attempt to evaluate the amount of the alleged benefits the improvement would contribute to appellees or any other landowners abutting on it. The claimed benefits either because of the improved highway or the new driveway from it to the farm of appellees were not at the trial expressed in any manner in terms of money. There is no way that a jury in this case could have determined from the evidence the amount in money of any special benefits to appellees."

 We are agreed that, under the evidence in this case, it was error for the trial court to submit the issue of benefits to the jury. Because of the form of the jury's verdict, however, this error will not necessarily affect the entire judgment. The verdict itemized the amounts for the separate elements of damage and benefits.

Thus the value of the land actually taken was found to be $1,299; the damages to the remainder of appellant's tract was found to be $5,595; the benefits were assessed at $1,000, and the net verdict was for the sum of $5,874. Since the error in submitting the issue of benefits to the jury could have prejudiced appellant only to the extent of $1,000, it is ordered, that if respondent will agree to increase the amount of the judgment to $6,874 the judgment, as amended, will be affirmed, otherwise a new trial is granted.

SATHRE, C. J., and MORRIS, STRUTZ and TEIGEN, JJ., concur.