**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Mitchell DACHTLER, Defendant and Appellant.**

**Cr. No. 794.**

Supreme Court of North Dakota.

April 29, 1982.

Benjamin C. Pulkrabek, Mandan, for defendant and appellant.

Gail Hagerty, Asst. State's Atty., Bismarck, for plaintiff and appellee.

PAULSON, Justice.

Mitchell Dachtler appeals from the criminal judgment of the District Court of Burleigh County entered on August 19, 1981, finding him guilty of burglary. We affirm.

On November 29, 1980, a break-in was discovered at the Student Union Building at Bismarck Junior College. Windows were broken, vending and game machines had been broken into, and a safe was missing. During the course of their investigation of the scene, police officers discovered a bracelet and a cigarette lighter in the heavily damaged game room of the Student Union. Both of these items belonged to Mitchell Dachtler, the defendant, who was employed at the game room of the Student Union.

Police subsequently received information from several individuals who said that Dachtler had admitted committing the break-in with Timothy Earl Gray. Witnesses had seen Dachtler and Gray together in Dachtler's car on the night of November 28, 1980, the night before the discovery of the break-in. The safe which had been taken from the Student Union was eventually found approximately a quarter of a mile from Timothy Gray's home.

On January 6, 1981, a criminal complaint was filed charging Dachtler and Gray with

burglary. The charges against Gray were subsequently dropped. Dachtler's first trial ended in a mistrial when the jury was unable to reach a verdict. The second trial resulted in a verdict of guilty, and Dachtler was sentenced to serve four years in the North Dakota State Penitentiary.

Dachtler raises the following issues on appeal:

1. Did the district court err when it ruled that Aaron Rash was qualified as an expert in glass comparison analysis?

2. Did the district court err in preventing the defendant from requesting in open court that Timothy Gray be granted immunity and in refusing to give the "missing witness" instruction?

3. Did the district court err in giving its own instruction on equivocation rather than North Dakota Jury Instruction 1308?

## I

The first issue raised by Dachtler is whether or not the district court erred when it allowed Aaron Rash to testify as an expert in glass comparison analysis. Rash was called as a witness by the State to testify as to the similarity between glass chips found on the floor of the Student Union and glass chips found in the soles of the shoes allegedly worn by Dachtler on November 28, 1980.

Dachtler contends that Rash was not qualified to give an opinion on this issue because he had no specialized training and had not read any recognized authorities in the field of glass comparison. Rule 702 of the North Dakota Rules of Evidence sets forth the applicable criteria for admission of expert testimony:

## "TESTIMONY BY EXPERTS

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by *knowledge, skill,* *experience, training,* or *education,* may testify thereto in the form of an opinion or otherwise." [Emphasis added.]

■ The determination of whether or not a particular witness is qualified to testify as an expert is a question of fact to be decided by the trial court. *City of Bismarck v. Thom,* 261 N.W.2d 640, 647 (N.D.1977); *Holecek v. Janke,* 171 N.W.2d 94, 103 (N.D. 1969); *Jamestown Plumbing and Heating Co. v. City of Jamestown,* 164 N.W.2d 355, 360 (N.D.1968); *Intlehouse v. Rose,* 153 N.W.2d 810, 814 (N.D.1967). The trial court's determination will not be reversed on appeal unless the court has abused its discretion in admitting the evidence. *South v. National Railroad Passenger Corp.,* 290 N.W.2d 819, 831 (N.D.1980); *Holecek v. Janke, supra* 171 N.W.2d at 103; *Jamestown Plumbing and Heating Co. v. City of Jamestown, supra* 164 N.W.2d at 360; *Intlehouse v. Rose, supra* 153 N.W.2d at 814.

■ We cannot conclude in this case that the trial court abused its discretion in allowing Rash to testify as an expert. Aaron Rash has served with the Crime Laboratory at the State Laboratories Department for over twenty years, and has vast experience in examining physical evidence submitted by law enforcement agencies. Rash has a bachelor of science degree from North Dakota State University, is a graduate of the institute of Advanced Analytical Chemistry at Georgetown University, and has done graduate level study in chemistry and pharmacology at several universities.

Although Mr. Rash has had no formal training or education in glass fragment analysis, Rule 702, N.D.R.Ev., also permits a witness to testify as an expert if qualified by knowledge, skill, or experience. Mr. Rash was able to describe in detail the equipment used in glass fragment analysis and provided a detailed description of how the apparatus worked. In fact, Mr. Rash had built his own equipment with which to conduct glass fragment comparisons, and this equipment had been calibrated and verified through the use of known standards obtained from the National Bureau of Standards. Mr. Rash has also conferred exten-

sively with several nationally recognized experts in the field of glass fragment comparison regarding the equipment and techniques used in glass comparison. In previous cases he had been qualified as an expert in the field of glass fragment comparison and had been permitted to testify as an expert witness.

Under the circumstances in this case, the trial court did not abuse its discretion in allowing Rash to testify as an expert witness.

## II

Dachtler next raises several issues relating to the witness Timothy Gray's claim of Fifth Amendment privilege and his refusal to testify.

Dachtler first contends that he was effectively prevented from eliciting any testimony from Timothy Gray by the State's failure to grant immunity to Gray. Dachtler argues that the Compulsory Process Clause of the Sixth Amendment to the United States Constitution and Article I, Section 12 of the Constitution of North Dakota require a grant of immunity for defense witnesses. We disagree.

Section 31–01–09 of the North Dakota Century Code provides that a court may immunize a witness only upon written request by the prosecuting attorney with the approval of the attorney general:

"*31–01–09. Privilege against self-incrimination—Grant of immunity.*—No person shall be compelled to be a witness against himself in a criminal action. Notwithstanding any provision of law to the contrary, in any criminal proceedings before a court or grand jury or state's attorney's inquiry, if a person refuses to answer a question or produce evidence of any kind on the ground that he may be incriminated thereby, and if the prosecuting attorney, in writing and with approval of the attorney general, requests the court to order that person to answer the question or produce the evidence, the court after notice to the witness and hearing may so order, and that person shall comply with the order. In the case

of a state's attorney's inquiry, such application shall be made to the district court. After complying, and if, but for this section, he would have been privileged to withhold the answer given or evidence produced by him, that person shall not be prosecuted or subject to penalty or forfeiture for or on account of any transaction, matter, or thing concerning which, in accordance with the order, he gave answer or produced evidence. But he may nevertheless be prosecuted for any perjury or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order."

The Sixth Amendment of the United States Constitution provides, in relevant part:

"In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."

Article I, Section 12 of the Constitution of North Dakota provides, in relevant part:

"In criminal prosecutions in any court whatever, the party accused shall have the right . . . to have the process of the court to compel the attendance of witnesses in his behalf . . . ."

■ We do not believe that either of these constitutional provisions requires the State to grant immunity to defense witnesses. In *United States v. Turkish*, 623 F.2d 769, 773–774 (2d Cir. 1980), the United States Court of Appeals for the Second Circuit rejected an argument similar to that raised by Dachtler in the instant case:

"The established content of the Sixth Amendment does not support a claim for defense witness immunity. Traditionally, the Sixth Amendment's Compulsory Process Clause gives the defendant the right to bring his witness to court and have the witness's non-privileged testimony heard, but does not carry with it the additional right to displace a proper claim of privilege, including the privilege against self-incrimination. [Citations omitted.] While the prosecutor may not

prevent or discourage a defense witness from testifying, [citations omitted] it is difficult to see how the Sixth Amendment of its own force places upon either the prosecutor or the court any affirmative obligation to secure testimony from a defense witness by replacing the protection of the self-incrimination privilege with a grant of use immunity."

The United States Court of Appeals for the Sixth Circuit has reached the same conclusion in *United States v. Lenz*, 616 F.2d 960, 962 (6th Cir.), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980):

"The short answer to this contention is that defendants have no compulsory-process right to have their witnesses immunized. The cases decided under the compulsory process clause of the sixth amendment hold only that the Government may not act to prevent an otherwise willing witness from testifying for the defendant. *See Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976). So far as we are aware, no court has held that compulsory process requires the Government to exercise its statutory use-immunity power affirmatively for a defendant's benefit."

We conclude that neither the Sixth Amendment to the United States Constitution nor Article I, Section 12 of the Constitution of North Dakota requires that the State grant immunity to defense witnesses.[1]

■ Dachtler also contends that the district court erred when it refused to let Dachtler's attorney request a grant of immunity for Timothy Gray in open court with the jury present. Prior to the beginning of the trial, the trial judge met with Dachtler's counsel and the prosecuting attorney in chambers to discuss procedural matters. The probability of Timothy Gray invoking his Fifth Amendment rights was discussed at that time, and Dachtler's counsel raised the issue of a possible grant of immunity for Gray. The trial judge indicated at that time that any request for immunity should be made in chambers, and that no mention of immunity was to be made in open court with the jury present.

We have previously stated, in *Haugen v. Mid-State Aviation, Inc.*, 144 N.W.2d 692, 696 (N.D.1966), that:

". . . the trial judge is allowed great latitude and discretion in conducting the trial and, except for an obvious abuse of that discretion, his conduct of the trial will not be grounds for reversible error. The trial judge is the one who determines how the trial should be conducted."

In this case the determination of where the request for immunity was to be made was a procedural matter left to the discretion of the trial judge. The trial judge did not abuse that discretion when he ruled that any request for immunity for Timothy Gray was to be made in chambers, out of the presence of the jury.

Dachtler further contends that, after his request for immunity for Gray was denied, the trial court should have given the "missing witness" instruction, North Dakota Jury Instruction 1006. Dachtler's requested instruction provided:

"FAILURE TO PRODUCE WITNESS

"If a party has failed to produce a witness

(1)(a) who was available to him by the exercise of reasonable diligence;

(b) who was not equally available to the adverse party;

and

---

1. We have limited our discussion of this issue to the grounds raised by Dachtler—the Compulsory Process Clause of the Sixth Amendment of the United States Constitution and Article I, Section 12 of the Constitution of North Dakota. We note that the Due Process Clause has also been asserted as a basis for defense witness immunity in other cases, but Dachtler has not presented that issue. We therefore express no opinion as to whether or not the Due Process Clause may support a claim for immunization of defense witnesses. For a thorough discussion of the defense witness immunity issue, *see* Note, *The Constitutional Right to Defense Witness Immunity*, 57 N.D.L.Rev. 187 (1981).

(c) who would have been produced by a reasonably prudent person under the same or similar circumstances if that person had reason to believe the testimony to be favorable to him,

and

(2) No reasonable explanation for such failure is given,

you may infer that the testimony of the witness would be unfavorable to that party."

■■■ Dachtler contends that Gray was not equally available to both parties because the State could have requested immunity for Gray and thereby elicited his testimony. We do not believe, however, that the "missing witness" instruction is applicable in situations where the witness in question is present and called to testify but claims a valid testimonial privilege. *State v. Unterseher*, 255 N.W.2d 882, 890 (N.D. 1977); *State v. Smith*, 238 N.W.2d 662, 667 (N.D.1976). By its very language, the instruction, NDJI 1006, applies only when the party has failed to "produce" a witness. In the instant case, Gray was present at trial and was called to the stand. Furthermore, even if we accepted Dachtler's contention that Gray was not equally available to him because the State could have elicited Gray's testimony by a request for immunity, the instruction further provides that an adverse inference arises only if no reasonable explanation for the failure to produce the witness is given. In this case, the State clearly had a reasonable explanation for refusing to produce Gray's testimony through a request for immunity—the State believed that Gray was involved in the burglary, and the potential for charging Gray with burglary still existed.

We conclude that the "missing witness" instruction is inappropriate in situations where the witness in question appears at trial and asserts a valid Fifth Amendment testimonial privilege, and the district court did not err in refusing to give the "missing witness" instruction in this case.

III

Finally, Dachtler contends that the district court erred in refusing to give North Dakota Jury Instruction 1308 on equivocation, which Dachtler requested. The district court, instead, gave its own instruction on equivocation.

Dachtler does not point to any specific error in the instruction on equivocation given by the district court, but rather argues that the court should be required to use pattern jury instructions if such instructions exist. This court, however, has previously held that the North Dakota Jury Instructions, published by the State Bar Association of North Dakota, are suggested instructions only, and are not mandatory. *Eriksen v. Boyer*, 225 N.W.2d 66, 73 (N.D. 1974); *State v. Jacob*, 222 N.W.2d 586, 589 (N.D.1979).

■■■ Instructions which fairly inform the jury of the applicable law are all that is required. The trial court need not give instructions in the specific language requested by the defendant. *State v. Sheldon*, 301 N.W.2d 604, 611 (N.D.1980), *cert. denied*, 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981); *State v. Folk*, 278 N.W.2d 410, 414 (N.D.1979). We conclude that the district court did not err in refusing to give Dachtler's requested jury instruction on equivocation.

In light of the foregoing reasoning, the judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.