*889 OPINION OF THE COURT
Stephen G. Crane, J.
This case presents an application, novel in New York, of the so-called missing witness inference to a situation where the witness has asserted his Fifth Amendment privilege and rendered himself unavailable. Defendant’s request to deliver a missing witness charge in this circumstance is granted.
The People called Barry Allen on their direct case. Mr. Allen was one of the four youths whom defendant allegedly shot on the subway on December 22, 1984. The witness invoked his Fifth Amendment privilege, and the Assistant District Attorney refused to offer immunity to Mr. Allen. This took place outside the presence of the jury, and the jury was never informed that Mr. Allen invoked his privilege. (Cf., People v Thomas, 51 NY2d 466.)
Although invited to do so, the defendant never called Mr. Allen. The Assistant District Attorney at one time indicated to defense counsel that if defendant were to call Mr. Allen he would offer immunity. (See, People v Shapiro, 50 NY2d 747; People v Sapia, 41 NY2d 160, cert denied 434 US 823.) The court tried to make the "cheese more binding” by suggesting that defense counsel could pose leading questions to Mr. Allen and even impeach him on the basis of prior inconsistent statements and his criminal record. (Cf., Chambers v Mississippi, 410 US 284.)
The People had already immunized Troy Canty and James Ramseur who testified before the second Grand Jury that indicted defendant for attempted murder and other serious felonies. (People v Goetz, 68 NY2d 96, 102-103.) It was acknowledged that immunity was being withheld from Barry Allen as trial strategy, and that there was no interest in pressing criminal charges against Mr. Allen stemming from the events of December 22, 1984.
For a party to secure a missing witness charge, there must be an available, uncalled witness in a position to give material evidence that is not simply cumulative and that would naturally be expected to be favorable to the party who has failed to call him. (Richardson, Evidence § 92, at 66 [Prince 10th ed].)
There is no dispute that Barry Allen is in a position to give material evidence that would reasonably be expected to favor •the prosecutor. After all, Mr. Allen is a complaining witness against Bernhard Goetz, the man who shot him. This evidence clearly would be noncumulative as demonstrated by Allen’s *890 pretrial statements and an interview of him and Troy Canty by the National Enquirer. It would tend to corroborate or contradict one of the contrasting versions of the incident presented by Troy Canty’s testimony and defendant’s statements in Concord, New Hampshire. (See, People v Rodriguez, 38 NY2d 95, 101; People v Aponte, 69 AD2d 204, 219-220.) In addition, Mr. Allen is physically available. He was produced from State prison on the District Attorney’s application for a writ of habeas corpus ad testificandum. The District Attorney even called Mr. Allen to the stand on the People’s direct case.
It is true that Mr. Allen has been subject to call by the defendant throughout this trial. But, this circumstance in no measure places Mr. Allen within the control of defendant. Where such a witness may be expected to testify favorably to the People, and adversely to defendant, he must be considered in the control of the People, even though defendant had the physical ability to call him. (People v Gonzalez, 68 NY2d 424, 431; cf., People v Wilson, 64 NY2d 634, 636.)
Once the defendant establishes a right to the missing witness charge, the burden shifts to the prosecutor to account for the absence of the witness or to demonstrate that the charge would be inappropriate. (People v Gonzalez, supra, at 428; Chandler v Flynn, 111 AD2d 300, 301, appeal dismissed 67 NY2d 647.) In seeking to discharge their burden of showing that the requested charge is inappropriate, the People argue that their failure to elicit testimony from Mr. Allen is excusable because the witness invoked his privilege against self-incrimination and thereby became unavailable to the prosecution.[1] Yet, this contention is but at the threshold of the problem.
A witness who invokes the privilege against self-incriminatian is considered unavailable for many purposes. (People v Brown, 26 NY2d 88, 94 [admissions against penal interest]; Richardson, Evidence §§ 258, 260 [Prince 10th ed]; Fed Rules Evid rule 804 [admissibility of former testimony, of statement against interest and of statements of personal or family history].) This factor may allow the prosecutor to escape a missing witness inference, if the People were to furnish a *891 reasonable explanation for withholding immunity from Mr. Allen. (State v Dachtler, 318 NW2d 769, 744 [Sup Ct, ND] [dictum].) After all, if the cause for the unavailability of the witness is due to the failure of the People to fulfill a condition (conferral of immunity), the People may not rely on this unavailability (cf., Amies v Wesnofske, 255 NY 156, 162-163). The Assistant District Attorney argues, in effect, that no such explanation can be required of the People because the conferral of immunity is a matter of prosecutorial discretion (CPL 50.30). This discretion is broad. Yet it may be reviewed for abuse. (People v Chin, 67 NY2d 22, 32; People v Adams, 53 NY2d 241, 247; People v Osorio, 86 AD2d 233, 239, appeal dismissed 57 NY2d 671.) A frequently cited instance of abuse is presented by a case where the prosecution is built on immunized testimony, yet the defense is denied access to similarly immunized testimony. (See, People v Adams, supra.) By contrast, a prosecutor cannot be criticized for withholding immunity from a coperpetrator, even if he offers to exculpate the defendant.[2] The cases on which the Assistant at bar relies are but examples of this proposition. (See, e.g., Morrison v United States, 365 F2d 521; United States v Brutzman, 731 F2d 1449.) Incidentally, these Federal authorities are in accord that the missing witness instruction is a matter for judicial discretion (Morrison v United States, supra, at 524) and that the prosecutor’s discretion to withhold immunity is reviewable for abuse (United States v Flomenhoft, 714 F2d 708, 713).
Contrasting any reasonable grounds for withholding immunity, the case at bar exhibits selectivity among the shooting victims that goes without explanation other than trial strategy. This is insufficient to carry the People’s burden of demonstrating that the missing witness charge is inappropriate.
To countenance such a strategy would raise profound constitutional questions of the defendant’s right to confront the witnesses against him under the Sixth Amendment of the US Constitution and to his right to due process under the Fourteenth Amendment. (Cf., People v Shapiro, 50 NY2d 747, 760; People v Sapia, 41 NY2d 160, 165, cert denied 434 US 823; see also, United States v Flomenhoft, supra, at 714, and United States v Brutzman, supra, at 1452.) It is basic that a court will *892 not decide constitutional issues unless they are unavoidable. (Matter of Legal Aid Socy. v Scheinman, 73 AD2d 411, 413, affd 53 NY2d 12; cf., McKinney’s Cons Laws of NY, Book 1, Statutes § 150, at 307, n 62.)
For the foregoing reasons, the jurors will be charged that they may infer, if they wish, that the testimony of Barry Allen would not have been favorable to the People.[3]

. It is of no consequence that the People actually called Allen to the stand, albeit outside the presence of the jury. It is essentially from their failure to elicit testimony from him that defendant seeks to derive an unfavorable inference charge. (See, People v Moore, 17 AD2d 57, 61, cert denied 371 US 838; contra, State v Dachtler, 318 NW2d 769, 744 [Sup Ct, ND].)

. The prosecutor has disclaimed any intention of prosecuting Barry Allen for the events of December 22, 1984. Indeed, in his application to represent the case pursuant to CPL 190.75 (3), he denied that the four youths were intent on robbing defendant.

. See, People v Moore, 17 AD2d 57, 62, cert denied 371 US 838; People v Aponte, 69 AD2d 204, 219.