**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Robert Lynn RIPPLEY, Defendant and Appellant.**

**Cr. No. 815.**

Supreme Court of North Dakota.

May 13, 1982.

John M. Olson, State's Atty., Bismarck, for plaintiff and appellee.

Ralph A. Vinje, Bismarck, for defendant and appellant.

PEDERSON, Justice.

Rippley appeals from a conviction on a charge of delivery of a controlled substance and from an order denying his motion to dismiss the prosecution. We affirm.

The parties have stipulated that the issue before this court is strictly one of law involving the question: whether or not the complaint should have been dismissed upon Rippley's pretrial motion for dismissal attacking the constitutionality of § 19–03.1–23(1), NDCC. The statute provides as follows:

> "19–03.1–23. Prohibited acts A—Penalties.
>
> "1. Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance; . . . "

Deliver is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance whether or not there is an agency relationship." Section 19–03.1–01(6).

Rippley argues that the absence of a culpability requirement in § 19–03.1–23(1) results in strict liability, promotes selective enforcement, and can result in innocent persons, such as a postman, subject to convictions for delivery of controlled substances in North Dakota.[1]

---

1. Authorized possession and delivery are excepted from the prohibitions of Chapter 19–03.1, NDCC. Undoubtedly a postman would claim the exception if he were charged. Nevertheless, Rippley cannot challenge the statute on the ground that it may conceivably be applied

The State argues that Rippley has no standing in this case because Rippley does not claim that he mistakenly or unwittingly delivered a controlled substance. The State also argues that any prejudice to Rippley by charging him under § 19–03.1–23(1) was removed because the charging information alleged that he willfully and unlawfully delivered the cocaine, and because the judge instructed the jury that they had to find Rippley to have willfully delivered in order to convict him.

We must first determine whether or not Rippley has standing.

■ The denial of Rippley's motion to dismiss the prosecution against him was not appealable. Section 29–28–06, NDCC; *State v. Johnson*, 142 N.W.2d 110 (N.D. 1966). Rippley waited and appealed from the judgment so that we could review the denial of his motion to dismiss on appeal from the judgment. Rule 35(c), NDRAppP.

■ Rippley made no application for a writ of prohibition. Section 32–35–01. In *State v. Hanson*, 252 N.W.2d 872, 875 (N.D. 1977), we stated "that an application for a writ of prohibition is one appropriate way to raise the question of the constitutionality of a criminal statute's being enforced against the applicant." We did not say that this was the preferred method, even though the question is resolved without the expense and delay of a trial. The writ, however, is an extraordinary remedy to be sparingly used where there is no adequate remedy by appeal. *Id., State v. Hanson, supra*, at 875. In *Davis v. O'Keefe*, 283 N.W.2d 73, 76 (N.D.1979), we refused a writ of prohibition on the ground that a criminal defendant had not shown that he would be irreparably injured by the State's continued prosecution, and because he could "ultimately avail himself of the right to appeal in the event he is convicted . . . There is no irreparable injury, per se, as a matter of law, when an individual is required to defend himself against a criminal charge." In any event, the decision whether or not to grant the writ is discretionary with the court. *Id.*

unconstitutionally to others. *State v. Wood-*

*Hanson, supra*, does not foreclose other means of raising the question of the constitutionality of a criminal statute being enforced against a defendant. *Davis v. O'Keefe, supra*, indicates that an appeal from a judgment of conviction is another proper way to attack the constitutionality of a statute under which a defendant has been charged.

In *Hanson, supra*, the writ of prohibition foreclosed trial of the defendant until the constitutionality issue was resolved. In the instant case, Rippley's appeal followed his trial and conviction. We conclude, however, that the denial of Rippley's motion should be reviewed in the context of the time at which it was made, prior to trial, the same as was done in *Hanson, supra*, because, if the statute is unconstitutional, any proceedings pursuant to it are in excess of the court's jurisdiction. *See e.g., State v. Packard*, 32 N.D. 301, 310, 155 N.W. 666, 667 (1915) (tax commission acting under an unconstitutional law is acting outside of its jurisdiction).

■ This is not a case involving a procedural or evidentiary error which may be cured by subsequent instructions to the jury—jurisdiction of the court is in issue. Constitutional defects in a statute, which are not mere ambiguities, ordinarily cannot be cured by instructions at a trial. Our review is not affected. While it is true that the criminal information by which Rippley was charged alleged willful and unlawful delivery, and the court's instructions required the jury to find willful delivery, constitutional defects in the statute, if any, were not, in this case, thereby cured so as to deny standing.

This court has concluded:

". . . that it is proper for the Legislature to enact laws making the violation thereof a matter of strict criminal liability without a culpability requirement. . . .

"Further, we believe it is consistent with the purposes of a regulatory statute to allow the imposition of a fine or imprisonment for a violation of the offense

*worth*, 234 N.W.2d 243 (N.D.1975).

without offending due process. The regulatory provisions would be an exercise in futility if there were no sanctions for non-compliance." *State v. McDowell*, 312 N.W.2d 301, 306 (N.D.1981) (strict criminal liability upheld for statute providing for fine or imprisonment for issuing check without account or with insufficient funds).

In *McDowell, supra*, at 307, we pointed out a number of cases upholding strict liability crimes, including *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 536 (1971), involving a strict liability crime having a maximum penalty of 10 years imprisonment or $10,000 fine, or both.

Other courts have stated:

" . . . it is widely understood that the legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer. Whether criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined by the language of the act in connection with its manifest purpose and design. . . . See 21 Am.Jur.2d Criminal Law §§ 89–91 (1965), and 22 C.J.S. Criminal Law § 30, p. 101 (1961), wherein in each of these treatises we are told that it is generally within the power of the legislature to declare an act criminal irrespective of criminal intent, and that due process is not violated by excluding criminal intent as an element of the crime. This is especially true as to public welfare offenses, and food and drug offenses." *State v. Nagel*, 279 N.W.2d 911, 915 (S.D.1979). " . . . the legislature properly may prohibit the doing of an act which involves neither moral turpitude nor evil motive. In the area of drug regulation, guilty intent is not necessarily a prerequisite to the imposition of criminal sanctions.

*United States v. Wiesenfeld Warehouse Company*, 376 U.S. 86, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964)." *Coates v. Commonwealth*, 469 S.W.2d 346, 347 (Ky.1971) (possession of marijuana).

In *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922), involving an unlawful sale of narcotics in violation of the Narcotic Act of December 17, 1914 (49 Stat. 1703—now contained in 26 USC § 7201), the defendant demurred to the indictment on the basis that it did not charge him with knowledge of the nature of the drugs sold. The court stated that whether or not *scienter* was an element of a statutory offense was a matter of legislative intent, and concluded that the "manifest purpose [of the statute] is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him." *Id.* at 254, 42 S.Ct. at 303. *See also United States v. Behrman*, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619 (1922); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943).

The Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. 1 (1970),[2] is instructive as to the place of strict liability criminal statutes. Although critical of strict liability crimes the Working Papers, at p. 130, recognize:

"The various explanations offered for 'strict liability' in Federal criminal law depend finally on the conclusion that the legislature intended to impose strict liability, which it has the authority to do. '[S]uch legislation may, in particular instances, be harsh, but we can only say again what we have so often said, that this court cannot set aside legislation because it is harsh.' "[3]

2. " . . . the Commission's Working Papers may be considered when construing provisions of North Dakota's Criminal Code. [Citations omitted.]" *State v. Kaufman*, 310 N.W.2d 709, 712 (N.D.1981).

3. *See Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 70, 30 S.Ct. 663, 666, 54 L.Ed. 930

(1910); *Smith v. California*, 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *Chicago, Burlington & Quincy Ry. v. United States*, 220 U.S. 559, 31 S.Ct. 612, 55 L.Ed. 582 (1911).

■ Whether or not § 19–03.1–23(1) is a strict liability offense is a question of legislative intent to be determined by the language of the Act in connection with its manifest purpose and design. *See State v. Nagel,* 279 N.W.2d 911, 915 (S.D.1979).

■ Our review of the legislative history of § 19–03.1–23 indicates that the legislature intended the statute to contain no culpability requirement. Not only does subsection 1 contain no language requiring culpability but, also, in 1975 the legislature removed from § 19–03.1–23(3) the terms "knowingly or intentionally."

The Uniform Controlled Substances Act is based on the Federal Controlled Substances Act, 21 U.S.C. § 801 et seq. The federal counterpart to § 19–03.1–23, NDCC, is 21 USC § 841, which contains a culpability requirement of "knowingly or intentionally." This culpability language is absent in the Uniform Act and in its North Dakota adaptation.

We conclude, therefore, that § 19–03.1–23(1) defines a strict liability offense, and we adopt the rationale of the Court of Appeals of Missouri in a case involving distribution of a controlled substance under a provision of Missouri's Uniform Controlled Substances Act similar to § 19–03.1–23(1). The court stated:

> "... § 195.020 does not by its terms require a finding of an intent to distribute; the words 'willfully,' 'intentionally,' or 'knowingly' do not appear therein. As a general rule, however, a statute defining a crime is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when not in terms required and before a statute will be construed as to eliminate 'intent' as an element of an offense, the legislative intent to do so must be clearly apparent. It has been held, however, that a criminal intent is not an element of the offense where the commission of an act is made a crime without any express reference to intent.

Whether criminal intent is an element of a statutory crime depends on the intent of the legislature, and is a matter of statutory construction. *State v. McLarty,* 414 S.W.2d 315, 318 (Mo.1967). The Supreme Court of Missouri has held that under the prior Uniform Narcotic Drug Act and §§ 195.020 and 195.240 that knowledge on the part of an accused that the item sold was a narcotic drug was not included as an element of the offense under either section of the statutes. *State v. Page,* 395 S.W.2d 146, 149 (Mo. 1965), *State v. Napolis,* 436 S.W.2d 645, 647 (Mo.1969). In *Page,* l.c. 149, the court said: 'We find it difficult to conceive of any offense which so adversely affects public welfare and interest as the wrongful sale of narcotic drugs. This unquestionably justifies a State, in the exercise of its police power, to prohibit all sales thereof, except as specifically authorized, and to place on all persons the responsibility to see that they do not sell narcotic drugs unlawfully.' This same language was approved in *Napolis,* l.c. 647, and immediately thereafter the court announced the holding of the case, to-wit: 'We hold that the State has the same right, in the exercise of its police power, to prohibit possession, sale, distribution, or transfer of barbituates and stimulant drugs except as specifically authorized in the statute, and that it is not necessary that the legislature make knowledge or criminal intent an element of the offense.' " *State v. Gordon,* 536 S.W.2d 811, 817 (Mo.App.1976).

■ Section 19–03.1–23(1), by its express language, requires neither knowledge nor intent. Unauthorized delivery of a controlled substance is prohibited. The evil sought to be remedied is the uncontrolled, unauthorized use and distribution of controlled substances. The State has the power to enact legislation creating strict liability crimes and has done so.

■ Rippley argues further that the statute violates due process and proportion-

ality in punishment—Amendments 8 and 14, United States Constitution, and Article I, §§ 11 and 12, North Dakota Constitution—because it provides for severe penalties[4] which may be levied against the innocent or mistaken, as well as against conscious wrongdoers and, therefore, the statute fails to give fair warning of criminality and permits excessive discretion in law enforcement. Consideration of this argument, however, must await another day. Rippley can challenge only the statute as applied to him—the sentence he received—not as it might be applied to someone else at a future date. *State v. Unterseher*, 255 N.W.2d 882, 886 (N.D.1977). *See also Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973). Rippley does not contend that the sentence he received violated the cited constitutional provision. Rippley does not argue that he mistakenly or unwittingly delivered a controlled substance or that he is the subject of selective law enforcement.

The order denying Rippley's motion to dismiss the prosecution and the judgment of conviction are affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

---

**4.** Cocaine is a "narcotic drug," § 19–03.1–01(15)(d), NDCC, and a Schedule II controlled substance, § 19–03.1–07(2)(d). Delivery of a controlled substance classified in Schedule II, which is a narcotic drug, is a class A felony, § 19–03.1–23(1)(a). The maximum penalty for a class A felony is 20 years imprisonment, a fine of $10,000, or both. Section 12.1–32–01(1).